# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL DEWAYNE FOSTER,

        Petitioner,

    v.

KENNETH ROMANOWSKI,

        Respondent.

_____/

CASE NO. 2:11-CV-13553
JUDGE LAWRENCE P. ZATKOFF
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) and RESPONDENT'S MOTION FOR SUMMARY JUDGMENT (docket #5)

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural and Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Statute of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *The Merits of Petitioner's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Background Relating to the Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3.    *Failure to Reopen Voir Dire* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        4.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            b. Trial Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            c. Appellate Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    D.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

\*     \*     \*     \*     \*

I.    **RECOMMENDATION**: Because petitioner's habeas claim is without merit, and because the limitations issue is difficult and would likely require further factual development, the Court should deny respondent's motion to dismiss the petition as untimely under 28 U.S.C. § 2244(d) and should instead deny the petition on the merits. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    **REPORT**:

A.      *Procedural and Factual Background*

Petitioner Michael DeWayne Foster is a state prisoner, currently confined at the Macomb Correctional Facility in New Haven, Michigan. Petitioner is currently serving a sentence of 25-50 years' imprisonment imposed following his 2005 state court convictions for armed robbery, five counts of first degree criminal sexual conduct, second degree criminal sexual conduct, and two counts of assault with intent to commit sexual conduct involving penetration. The factual background underlying petitioner's convictions was accurately summarized in the trial court's opinion and order denying petitioner's motion for relief from judgment:

> Debra MaHolmes ("Debra"), forty seven, is the mother of Dequale MaHolmes ("Dequale"), then twenty one years old, and four other children. Dequale was 7 ½ [months] pregnant in May, 2004. Debra identified Foster and testified she has known him for more than twenty years, but was never in a dating relationship with him. Dequale also identified Foster.
>
> Foster called Debra at her work on May 29. He told her he had jewelry for sale at his house at 19319 Pelkey.
>
> Dequale picked Debra up from work and drove her to Foster's house on Pelkey. Debra had Forty Two Dollars and a cell phone in her purse. Debra entered the living room to look at the jewelry. Foster pulled out a ten inch butcher knife and pointed it to her neck. Foster forced Debra first to the basement and told her to remove all her clothes. She did. Debra begged Foster not to tie her up and to release her.
>
> Foster called Dequale to enter the house, which she did. Foster made Dequale take her clothes off. Although Dequale was 7 ½ months pregnant, Foster made her sit naked on the basement floor. Foster stole Debra's money at knifepoint.
>
> Foster apologized to the women and said he was going to release them. Foster then changed his mind and, at knifepoint, ordered them to take their clothes off. Foster performed oral sex on Debra at knifepoint.
>
> Foster forced Debra and Dequale upstairs at knifepoint. Foster forced them to lie on the bed where he performed more oral sex on Debra. Foster forced Debra to perform oral sex on him. Foster tried to penetrate Debra with his penis but was unable to complete the assault. Foster again put his penis in Debra's vagina, inserted a pillow under her and tried to vaginally penetrate her with his penis. Foster again forced his penis into Debra's mouth, put the knife up to Debra's neck and inserted his fingers in Debra's vagina, twice. Foster also sucked the pregnant Dequale's breast while Debra was forced to suck his penis. Foster forced his finger into Dequale's vagina.
>
> Foster then lit a crack pipe and put it to Debra's mouth. She implored Foster to let Dequale dress. Foster said that he might as well kill himself. Debra said "God

can fix anything" and that he should pray with her. Foster then laid Debra on the floor, performed oral sex again on Debra and used his tongue to try to penetrate Debra's anus. Foster said he was sorry and he would release them.

Foster let Debra and Dequale get dressed. Foster forced them to drive him to an apartment building on Schoenherr and Grenier. Foster got out of the car and Dequale and Debra called 911 from a cell phone. As they drove toward the ninth precinct, at Six Mile and Gunsten, they saw a police car and they stopped it.

Officer Jeremy Channells was on duty on May 29, 2004 in a semi-marked car when he was flagged down by Debra. Debra and Dequale were crying and had difficulty breathing. Their hands were shaking and trembling. He tried to calm Debra down so he could understand her. She disclosed she had been the victim of a sexual assault and Channell called a female officer. Debra and Dequale were taken to St. John Hospital by EMS.

Mary Lynn Halleck is a registered nurse and sexual assault nurse examiner at St. John Hospital. She testified to her medical examination of Debra and Dequale.

Foster was arrested. He told police that Debra was at his home to buy jewelry. Foster admitted he had a sexual (dating) relationship with Debra prior to that night, but denied he had sex with her on this night. Foster told police that Dequale was not at his house. Foster denied he robbed Debra of money at knifepoint, that he took any money from Debra, that he had a knife, or that he sexually assaulted Debra or Dequale.

Holly Foster, defendant's mother, testified she had seen Debra at Foster's house a number of times.

Michael Foster testified that he was dating Debra and they had a sexual relationship. Debra came over to his house to buy some jewelry with her daughter. He did not have a knife and did not force her to have sex. He did not assault or rob anyone. Debra voluntarily performed oral sex on Foster. He was also performing oral sex on Debra when Dequale came into the house unexpectedly. Because of her daughter's surprise discovery, Debra falsely claimed Foster was forcing her to have sex. The sex between Foster and Debra was really consensual.

*People v. Foster*, No. 04-008570-01, at 3-6 (Wayne County, Mich., Cir. Ct. Nov. 4, 2009) (citations to trial transcript omitted) [hereinafter "Trial Ct. op."].

Petitioner's application and the state court record reveal the following time line of the state court proceedings:

- On January 13, 2005, petitioner was convicted following a jury trial in the Wayne County Circuit Court. On February 8, 2005, the court imposed its sentence.

- Petitioner, through counsel, appealed as of right to the Michigan Court of Appeals, raising claims of improper admission of evidence, prosecutorial misconduct, and ineffective assistance of counsel. On June 29, 2006, the court of appeals affirmed petitioner's conviction and sentence. *See People v. Foster*, No. 261601, 2006 WL

1789028 (Mich. Ct. App. June 29, 2006) (per curiam).

- Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Supreme Court denied petitioner's application in a standard order on October 31, 2006. *See People v. Foster*, 477 Mich. 916, 722 N.W.2d 824 (2006).

- On July 23, 2007, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509. On August 7, 2007, the trial court appointed counsel to represent petitioner. On the same date, petitioner's motion was dismissed or withdrawn.[1]

- On February 8, 2008, petitioner filed a motion to reopen his motion for relief from judgment. That motion was granted by the trial court on February 12, 2008. On June 12, 2008, appointed counsel filed a motion for relief from judgment, raising as grounds for relief a claim that the trial court had erred in failing to reopen jury selection upon learning that a venire member had not fully responded to questioning by the court. The trial court denied the motion on November 4, 2009. *See* Trial Ct. op.

- Petitioner sought leave to appeal in the Michigan Court of Appeals. The court of appeals denied petitioner's application in a standard order on application on June 23, 2010. *See People v. Foster*, No. 296742 (Mich. Ct. App. June 23, 2010).

- Petitioner thereafter sought leave to appeal in the Michigan Supreme Court. That court denied petitioner's application for leave to appeal in a standard order on March 8, 2011. *See People v. Foster*, 488 Mich. 1045, 794 N.W.2d 591 (2011).

On July 20, 2011, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] As grounds for relief, petitioner raises the three grounds for relief (asserted as a single claim) that he raised in his state court motion for relief from judgment:

THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO REOPEN THE VOIR DIRE, AT THE REQUEST OF THE DEFENSE, WHERE A JUROR

---

[1]The state court docket sheet indicates that the motion was withdrawn. Petitioner asserts that the motion was dismissed by the trial court on its own motion.

[2]Although petitioner's application is file-stamped August 15, 2011, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing. *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988). Petitioner's application is signed and dated July 20, 2011. Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on July 20, 2011.

4

REVEALED PRIOR TO THE SWEARING OF THE JURY THAT DURING VOIR
DIRE HE FAILED IN RESPONSE TO A DIRECT QUESTION TO DISCLOSE
THAT HIS WIFE HAD LIKELY BEEN SEXUALLY ABUSED, THUS
PRECLUDING THE DEFENSE FROM EXERCISING A PEREMPTORY
CHALLENGE AGAINST THAT JUROR; OR, IN THE ALTERNATIVE, MR.
FOSTER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL DUE TO HIS TRIAL ATTORNEY'S FAILURE TO
ENFORCE AN AGREEMENT TO DISMISS THE JUROR AS AN ALTERNATE
AT THE END OF THE CASE, AND BY HIS INITIAL APPELLATE COUNSEL'S
FAILURE TO INCLUDE THIS ISSUE IN THE APPEAL OF RIGHT.

Respondent filed a motion for summary judgment on February 15, 2012, arguing that petitioner's

habeas application is untimely. Petitioner filed a response to respondent's motion on March 30, 2012.

For the reasons that follow, the Court should deny respondent's motion for summary judgment, and

should instead deny the petition on the merits.

B.      *Statute of Limitations*

        Respondent argues that petitioner's application is barred by the one-year statute of limitations

governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism

and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In

relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for

habeas petitions. Specifically, the statute as amended by the AEDPA provides:

        (1) A 1-year period of limitation shall apply to an application for a writ of
        habeas corpus by a person in custody pursuant to the judgment of a State court. The
        limitation period shall run from the latest of–
        (A) the date on which the judgment became final by the conclusion of direct
        review of the expiration of the time for seeking such review;
        (B) the date on which the impediment to filing an application created by State
        action in violation of the Constitution or laws of the United States is removed, if the
        applicant was prevented from filing by such State action;
        (C) the date on which the constitutional right asserted was initially recognized
        by the Supreme Court and made retroactively applicable to cases on collateral review;
        or
        (D) the date on which the factual predicate of the claim or claims presented
        could have been discovered through the exercise of due diligence.
        (2) The time during which a properly filed application for State post-conviction

or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[3]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. The claims asserted in petitioner's habeas application do not implicate subparagraphs (B) through (D), and petitioner does not contends that any of these provisions is applicable here. Thus the commencement date established by subparagraph (A) applies here. Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the

---

[3]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, petitioner's direct appeal concluded on October 31, 2006, when the Michigan Supreme Court denied his application for leave to appeal on direct appeal. Petitioner's conviction became final 90 days later when the time for seeking *certiorari* in the United States Supreme Court expired, or on January 29, 2007. Thus, the limitations period commenced on this date, and expired one year later on January 29, 2007. Because petitioner did not file his habeas application until September 24, 2009, it is untimely unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" Petitioner's motion for relief from judgment was filed in the trial court on July 23, 2008. By this time, 175 days had elapsed on the limitations clock.[4] Petitioner's motion was either dismissed or withdrawn on the same date. Assuming, as respondent does, that the limitations clock commenced again at this time, an additional 164 days elapsed before petitioner filed his motion to reopen the motion for relief from judgment. This filing again tolled the limitations period. The period began to run again when the Michigan Supreme Court denied petitioner's application for leave to appeal on March 8, 2011. The limitations period elapsed an additional 134 days between this date and petitioner's filing of his habeas application on July 20, 2011. Thus, under respondent's calculation a total of 473 days elapsed on the limitations clock, rendering petitioner's application untimely by 108 days.

Petitioner does not quarrel with the foregoing calculation. Rather, petitioner contends that he

---

[4]Respondent mistakenly asserts that 265 days elapsed in this time. It appears that respondent's calculation includes the 90 day period in which petitioner could have sought *certiorari*.

is entitled to equitable tolling of the limitations period for the time which elapsed between the trial court's dismissal of his motion for relief from judgment and his motion to reopen the proceedings on that motion. Petitioner contends that the trial court dismissed the motion on its own motion and without knowledge by petitioner or his appointed attorney, as evidenced by the fact that counsel filed a "Supplemental Motion" rather than a motion to reopen or a new motion for relief from judgment. Petitioner also submits, in support of his claim, an affidavit averring that he had no knowledge that the trial court had dismissed his initial *pro se* motion. Petitioner's argument may, if it can be properly supported, provide a basis for equitably tolling the statute of limitations. The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases," *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010), if the petitioner is able to "show[] '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition. *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The AEDPA's statute of limitations can be equitably tolled based upon a petitioner's failure to receive a court order or decision where the petitioner can adequately demonstrate that he did not receive a copy of the court decision and that he acted diligently to protect his rights both before and after receiving a copy of the decision. *See Miller v. Collins,* 305 F. 3d 491, 495-96 (6th Cir. 2002).

Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999) (internal citations omitted). Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F. 3d 426, 429 n. 2 (6th Cir. 2006) (quoting *Trussell v. Bowersox,* 447 F. 3d 588,

590 (8th Cir. 2006)). Here, resolution of the limitations issue would require further factual development to enable the Court to determine if petitioner or his counsel were put on notice that the trial court had dismissed petitioner's *pro se* motion, thus restarting the limitations clock. The merits, on the other hand, are readily resolved based on the state court record before the Court. Because even assuming the petition is timely it fails on the merits, the Court need not resolve the dispute over the timeliness of petitioner's habeas application and may deny the petition on the merits. *See Ahart v. Bradshaw,* 122 Fed. Appx. 188, 192 (6th Cir. 2005). In the interest of judicial economy, the Court should take this approach.

C.      *The Merits of Petitioner's Claims*

Petitioner raises three grounds for relief, all stemming from a juror who, after the jury had been seated but before it had been sworn, indicated that he had erred in response to a *voir dire* question. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v.*

*Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

2.      *Background Relating to the Claims*

Petitioner's claims relate to Juror No. 5, Mr. Davis. Upon entering the jury box as a replacement for a removed juror, the trial judge asked Mr. Davis whether he or any of his family members or close friends had been the victim of a sexual assault. Mr. Davis replied: "No. No victims that I know of." Trial Tr., dated 1/10/05, at 79.[5] Mr. Davis indicated that he could be fair to both sides and follow the law as given by the court. *See id.* at 78-79. Neither the prosecutor nor defense counsel asked Mr. Davis any questions. After both the prosecutor and defense counsel expressed satisfaction with the jury and the remainder of the pool had been dismissed, but prior to opening statements, Mr. Davis informed the court that, "I need to tell you something, if I may. Something I

---

[5]A separate juror, Juror No. 1, disclosed at sidebar during *voir dire* that he had been the victim of a sexual assault as a child, but could be fair and impartial. Juror No. 1 does not form any part of petitioner's claims, but was discussed by the parties in conjunction with Juror No. 5.

just though of. I don't think it will effect, but . . . ." *Id*. at 190. The trial judge conducted a sidebar with Mr. Davis and counsel, which he subsequently summarized for the record:

> One of the jurors approached me, juror number 5, Mr. Davis. I think it was Davis, juror number 5 and said that he recollected as a child, his wife may have been sexually assaulted. He doesn't know the details. He wasn't present. He doesn't know anything about it. He didn't see anything, but he felt he could be fair and impartial. But he wanted to disclose it because he had not recollected it during the course of the questioning.
> And we had a side bar and that was said in the presence of Mr. Simone and Mr. Washington at side bar. And he also said that he could be fair and he understood that, and he said it would not affect his decision in any way.

*Id*. at 91. The prosecutor and defense counsel affirmed that the trial judge had given a fair summary of the side bar conference. *See id*. When asked if he had anything else to add, defense counsel indicated that, had he known about Mr. Davis's new information, he "would have exercised a peremptory challenge." *Id*. at 92. A discussion then ensued in which the trial court tried to determine if counsel was referring to Juror No. 1, who disclosed that he himself had been a victim, or Juror No. 5, who disclosed only that his wife may have been a victim as a child. Counsel confirmed that he was speaking of Juror No. 5, but eventually indicated that he wanted to excuse both jurors. *See id*. at 92-94. Counsel did not, however, seek to reopen *voir dire* to ask further questions of Juror No. 5. The trial court declined petitioner's requested relief, but left open the possibility of excusing Juror No. 5 as an alternate at the conclusion of the trial:

> So that's – I'm not going to jeopardize the integrity of the entire trial by letting you reopen the peremptories on that basis for that one juror on that. But at the conclusion of the trial, if all the rest of the jurors are intact and if the parties agree to have him not, you know, be one of the alternates and not be the deliberator, then I'll do that.

*Id*. At the conclusion of the trial, neither the prosecutor nor defense counsel sought to excuse Mr. Davis as an alternate. The trial court subsequently denied petitioner's motion for relief from judgment asserting the claims presented here.

12

3. *Failure to Reopen Voir Dire*

Petitioner first contends that the trial court abused its discretion by failing to reopen *voir dire* so that he could exercise a peremptory challenge to excuse Mr. Davis. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

First, petitioner cannot show that he was denied his constitutional rights by Mr. Davis's initial inaccurate response during *voir dire*. In order to obtain a new trial because a juror has given a mistaken response to a question on *voir dire,* the litigant must demonstrate (1) that the juror failed to answer honestly a material question on *voir dire*; and (2) that the correct response would have provided a valid basis for a challenge for cause. *See McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556 (1984). The Supreme Court noted that to invalidate a trial because of a juror's mistaken but honest response to a *voir dire* question "is to insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555. Furthermore, although the motives for concealing information by jurors may vary, "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.* at 556. A juror may conceal information in a non-deliberate fashion, through an "honest, but mistaken, response." *United States v. Solorio,* 337 F.3d 580, 595 (6th Cir. 2003) (quoting *Zerka v. Green*, 49 F.3d 1181, 1186 n. 7 (6th Cir. 1995)). However, if information is not deliberately concealed by a juror, bias may not be inferred. Instead, the defendant must show actual bias on the part of the juror to obtain a new trial. *See Solorio,* 337 F.3d at 595-96.

Here, petitioner cannot show that Mr. Davis deliberately concealed information. From the sidebar discussion, it appears that Mr. Davis had only a vague recollection that his wife may have been sexually assaulted as a child, but he had no details and no personal knowledge of the assault. Further, the record supports the conclusion that as soon as Mr. Davis recollected this information, he

approached the trial court on his own and disclosed the information to the court and the parties. Second, petitioner cannot show that Mr. Davis was biased against him. Indeed, petitioner does not argue that Mr. Davis was biased, asserting only that he would have used a peremptory challenge to excuse Mr. Davis if he had been given the opportunity. The fact that Mr. Davis's wife may have been the victim of a sexual assault as a child many years before petitioner's trial does not provide a basis for inferring that Mr. Davis was biased. *See Gonzales v. Thomas*, 99 F.3d 978, 989-90 (10th Cir. 1996) (juror not presumed biased in rape case even though she had been the victim of a sexual assault 25 years prior to petitioner's trial); *see also*, *United States v. Gonzalez-Soberal*, 109 F.3d 64, 70 (1st Cir. 1997); *United States v. Gibbs*, 125 F. Supp. 2d 700, 708-09 (E.D. Pa. 2000), *aff'd*, 77 Fed. Appx. 107 (3d Cir. 2003). Further, Mr. Davis indicated both before and after the disclosure that he could be fair and impartial, an assurance the Court must presume was truthful. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim). Thus, petitioner cannot show that he was denied a fair trial by the late disclosure by Mr. Davis that his wife may have been the victim of a sexual assault as child. *Cf. Southward v. Warren*, No. 2:08-CV-10398, 2009 WL 6040728, at *27-*28 (E.D. Mich. July 24, 2009) (Komives, M.J.) (trial counsel not ineffective for failing to seek removal of juror for cause who revealed after jury selection but prior to oral arguments that she had been the victim of a sexual assault many years prior to the trial, where there was no showing that the juror was actually biased), *magistrate's report adopted*, 2010 WL 233035 (E.D. Mich. Feb. 26, 2010) (Steeh, J.).

Nor can petitioner show that he was denied a fair trial by the trial court's refusal to allow him

to exercise a peremptory challenge to excuse Mr. Davis. Unlike an appellate court on direct appeal, a federal court habeas court does not exercise supervisory powers over the state courts, *see Murphy v. Florida*, 421 U.S. 794, 797 (1975), and thus a federal court's habeas jurisdiction is limited to correcting violations of federal constitutional law; it does not have the authority to correct perceived injustices absent a constitutional violation. *See Guinan v. United States*, 6 F.3d 468, 470-71 (7th Cir. 1993); 28 U.S.C. § 2254(a) (emphasis added) (federal court has jurisdiction to entertain petition brought by state prisoner "*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").[6] Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). And, so long as it does not violate a specific constitutional guarantee, the manner of impaneling a jury is a question for the state courts. More specifically, the Supreme Court has "long recognized that peremptory challenges are not of constitutional dimension." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). Rather, "[t]hey are a means to achieve the end of an impartial jury." *Id*. Thus, a state procedure which lessens the number or effectiveness of a petitioner's peremptory challenges does not provide a basis for habeas relief in the absence of a claim that the jury as selected was not impartial. *See Fox v. Ward*, 200 F.3d 1286, 1293 (10th Cir. 2000); *see also*, *Ballinger v. Byron*, 98 F. Supp. 2d 119, 131 (D. Mass. 2000) (citing *Ross*, 487 U.S. at 88) ("[D]iminution of peremptory challenges is a matter of state, not federal constitutional, law."). Here, as noted above, petitioner has not argued, much less shown, that Mr. Davis or the jury as selected

---

[6]In contrast, a federal court may use its supervisory powers over lower federal courts and federal prosecutors to correct injustices. *See United States v. Leslie*, 783 F.2d 541, 569-70 (5th Cir. 1986) (en banc) (Williams, J., dissenting), *vacated*, 479 U.S. 1074 (1987); *United States v. Crawford*, 466 F.2d 1155, 1157 (10th Cir. 1972).

were not impartial. Thus, he cannot show that he was denied a fair trial by the trial court's failure to reopen *voir dire* so he could peremptorily challenge Mr. Davis, and he is therefore not entitled to habeas relief.

### 4. *Ineffective Assistance of Counsel*

Petitioner also contends that his trial counsel was ineffective for failing to seek the removal of Mr. Davis as an alternate at the conclusion of the trial, as the trial court had offered to do when the issue arose at the start of the trial. He further argues that his appellate counsel was ineffective for failing to raise his habeas issues on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a. *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420.

The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

### b. Trial Counsel

Here, it is doubtful that petitioner can establish that trial counsel's performance was deficient under this high standard. "[J]ury selection is a process that inherently falls within the expertise and experience of trial counsel." *Palacio v. State*, 511 S.E.2d 62, 67 (S.C. 1999) (citing cases). Because of this, counsel's decisions in the jury selection process are the type of strategic decisions which are particularly difficult to attack. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Cordova v. Johnson*, 993 F. Supp. 473, 530 (W.D. Tex.) (footnote omitted) (internal quotation omitted) ("Selecting a jury is more art than science. There is nothing unreasonable or professionally deficient in a defense counsel's informed decision to rely upon his own reading of venire members' verbal answers, body language, and overall demeanor[.]"), *aff'd*, 157 F.3d 380 (5th Cir. 1998). Here, petitioner has failed to offer anything to show that counsel's decision to retain Mr. Davis at the conclusion of the trial was anything other than a reasonable strategic decision.

More importantly, even if petitioner could show that counsel's performance was deficient, he cannot show that he was prejudiced by counsel's failure to seek Mr. Davis's dismissal as an alternate. In order to establish prejudice attributable to a counsel's failure to remove a juror, a defendant must show that the juror was actually biased. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *Irons v. Lockhart*, 741 F.2d 207, 208 (8th Cir. 1984); *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999); *Odle v. Calderon*, 919 F.

Supp. 1367, 1389 (N.D. Cal. 1996). As explained above, petitioner has failed to allege, much less show, that Mr. Davis was biased. Thus, he cannot show that he was prejudiced by counsel's failure to seek Mr. Davis's dismissal, and he is therefore not entitled to habeas relief on this claim.

### c. Appellate Counsel

Likewise, petitioner cannot show that he was prejudiced by his appellate counsel's failure to raise these claims on direct appeal. In the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Here, as explained above, petitioner's ineffective assistance of trial counsel claim, as well as any constitutional claim based on the trial court's failure to reopen *voir dire* to allow petitioner to exercise a peremptory challenge on Mr. Davis, are without merit. Further, any state law challenge to the trial court's failure to reopen *voir dire* that counsel could have raised in the Michigan Court of Appeals would have been without merit. Under Michigan law, improper denial of a peremptory challenge is subject to harmless error review, and warrants reversal only where the error results in a fundamental miscarriage of justice. *See People v. Bell*, 473 Mich. 275, 294-95, 702 N.W.2d 128, 139 (2005). Because, as explained above, the jury as constituted was impartial, petitioner cannot show that a fundamental miscarriage of justice occurred under state law. *See People v. Jackson*, No. 266369, 2007 WL 778138, at *4 (Mich. Ct. App. Mar. 15, 2007). Because an appellate claim based on state law would have fared no better than one based on the Constitution, petitioner cannot show that he was prejudiced by his appellate counsel's failure to raise such a claim on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### D.  *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts the foregoing recommendation, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, it is clear that any error in the exercise of peremptory challenges is not of constitutional dimension, and that the seated juror was not biased against him. Thus, the resolution of petitioner's claim is not reasonably debatable. Further, because petitioner has failed to show that Mr. Davis was biased against him, it is clear that petitioner is unable to establish prejudice resulting from trial counsel's failure seek Mr. Davis's dismissal or from appellate counsel's failure to raise his habeas claims on appeal. Thus, the resolution of petitioner's ineffective assistance claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

E.      *Conclusion*

In view of the foregoing, the Court should, as a matter of judicial economy, deny respondent's motion for summary judgment on limitations grounds, and instead should deny petitioner's application on the merits. If the Court accepts this recommendation, the Court should also deny the certificate of appealability..

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 4, 2012                        s/Paul J. Komives
                                          PAUL J. KOMIVES
                                          UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on May 4, 2012 electronically and/or U.S. mail.

                                          s/Michael Williams
                                          Relief Case Manager for the Honorable
                                          Paul J. Komives